**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

CHERI DITMER,                                           Case No. 1:10-cv-877

      Plaintiff,                                              Beckwith, J.
                                                                      Bowman, M.J.

  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Cheri Ditmer filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On September 22, 2006, Plaintiff filed an application for Supplemental Security Income (SSI) alleging a disability onset date of September 1, 2006, due to knee pain, lumbar disc disease, ruptured blood vessels in head, stroke, mitral valve prolapse, personality and emotional changes and poor memory. (Tr. 136, 152). She was born in 1974 and was 32 years old on her alleged onset date. *Id.* After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge (ALJ). On December 2, 2009, Plaintiff, who was represented

1

by counsel, appeared and testified at a hearing before ALJ Robert Flynn. (Tr. 25-79). A vocational expert (VE), Robert Breslin, also appeared and testified at the hearing.

On January 28, 2010, the ALJ entered his decision denying Plaintiff's SSI application. (Tr. 11-19). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. There is no evidence that the claimant has engaged in any substantial gainful activity since her alleged on set date of September 1, 2006 (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: residuals of a craniotomy secondary to an intracranial hemorrhage to the right frontal lobe, mild encephalopathy, migraines, degenerative disc disease of the lumbar spine, residuals of a hysterectomy secondary to a uterine fibroid tumor, degenerative joint disease of the knees, depression, anxiety and somatoform disorder (20 CFR 416.920(c)).

   ……………………..

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

   ……………………..

4. Careful consideration of the entire record shows that the claimant has the residual functional capacity to perform a range of sedentary work, as defined in 20 CFR 416.967(a), with the exceptions set forth below.[1]

---

[1] She could lift or carry 10 pounds frequently and could lift up to 15 pounds. She could stand and/or walk 4 hours a workday. She should be allowed to alternate positions as needed. She can push pull within her lifting restrictions. She could occasionally balance, stoop, crouch, kneel, and crawl. She cannot climb ladders, ropes, or scaffolds. She could frequently handle and finger. She should avoid unprotected heights, moving machinery, and moderate exposure to excessive noise - no traffic, manufacturing, or louder. The work should be limited to simple, routine, and repetitive tasks; in a low stress environment defined as free of fast paced production requirements; involving only simple, work-related decisions; and with few, if any, workplace

2

……………………..

5.     The claimant has no past relevant work (20 CFR 416.965).

6.     The claimant was born on August 15, 1974, was 32 years old on her alleged onset date, and considered to be a younger individual (20 CFR 416.963).

7.     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.     Transferrability of job skills is not an issue because the claimant does not have past relevant work. (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 416.969 and 416.969(a)).

……………………..

10.     The claimant has not been under a disability, as defined in the Social Security Act, since September 1, 2006, her alleged onset date (20 CFR 416.920(g)).

(Tr. 13-19).

Thus, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and therefore not entitled to SSI.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory

---

changes. She should have no contact with the general public, but could have occasional contact with coworkers with no tandem tasks, and with supervisors with work checked four times a day. (Tr. 18).

meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination,

4

meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Consideration of Plaintiff's RFC**

The ALJ found Plaintiff capable of performing a range of sedentary work, with the following exertional and nonexertional limitations:

> She could lift or carry 10 pounds frequently and could lift up to 15 pounds. She could stand and/or walk 4 hours a workday. She should be allowed to alternate positions as needed. She can push pull within her lifting restrictions. She could occasionally balance, stoop, crouch, kneel, and crawl. She cannot climb ladders, ropes, or scaffolds. She could frequently handle and finger. She should avoid unprotected heights, moving machinery, and moderate exposure to excessive noise - no traffic, manufacturing, or louder. The work should be limited to simple, routine, and repetitive tasks; in a low stress environment defined as free of fast paced production requirements; involving only simple, work-related decisions; and with few, if any, workplace changes. She should have no contact with the general public, but could have occasional contact with coworkers with no tandem tasks, and with supervisors with work checked four times a day.

5

(Tr. 18).

On appeal to this Court, Plaintiff maintains that the ALJ's RFC finding and hypothetical questions to the VE failed to include limitations arising from Plaintiff's migraine and other headache pain, short term memory loss, and her inability to perform simple arithmetic calculations. Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignment of error should be overruled.

*1. Migraine Headaches*

In September 2006, Plaintiff was hospitalized due to severe headache pain. (Tr. 236). A CT scan revealed a large right intracerebral bleed and Plaintiff was diagnosed with a right frontal hemorrhage secondary to arteriovenous malformation (defects in her circulatory system). (Tr. 237, 244). On September 18, 2006, she underwent surgery to remove her hemorrhage and correct the defects in her circulatory system. (Tr. 439-40). The surgery was successful and follow-up treatment notes indicate Plaintiff was "recovering well" and had no significant neurological problems. (Tr. 259). In November 2006, Plaintiff reported that she was "functioning nearly completely to a normal baseline." (Tr. 265).

Plaintiff continued to complain of headaches in 2007. Notably in January 2007, Plaintiff was examined by Dr. Smith at the request of the state agency. Plaintiff complained of daily throbbing headaches. (Tr. 276). Dr. Smith noted some mild physical abnormalities, but her physical examination was largely normal (Tr. 277-78). Dr. Smith indicated that Plaintiff had "mild" encephalopathic features which caused impairment in her recent memory and some problems with higher integrative function (Tr. 278). However, Dr. Smith also found that Plaintiff had only "very mild" neurologic residuals. (Tr. 278). Dr. Smith concluded that Plaintiff was impaired in her ability to lift

6

and carry but had no impairment in her ability to sit, walk, handle objects, hear, speak, or travel. (Tr. 278).

In March 2007, a CT scan showed encephalopathic changes in Plaintiff's right frontal lobe but revealed no acute findings or abnormalities. (Tr. 319). Plaintiff also presented to the emergency room with headache pain in March 2007. (Tr. 315-17). Treatment notes from the ER indicate that Plaintiff was given medication and released.

Two years later, in March 2009, Plaintiff was treated for migraine headache pain by Dr. Kanabar, a neurologist. (Tr. 329-31). At that time, Dr. Kanabar diagnosed Plaintiff with a history of common migraines and an intracerebral right frontal lobe hemorrhage secondary to circulatory defects. (Tr. 331). Dr. Kanabar further opined that Plaintiff was overusing Tylenol and prescribed Keppra to eliminate or reduce her migraines. (Tr. 330-31). Dr. Kanabar recommended physical therapy and advised Plaintiff to avoid lifting, pushing, and pulling greater than 15 pounds if possible. (Tr. 331). Dr. Kanabar also ordered an MRI of Plaintiff's brain and further advised her to find a primary care physician. (Tr. 331). In April 2009, Plaintiff underwent a brain MRI, which revealed alterations in her brain (encephalopathy) and scars (gliosis) that were consistent with Plaintiff's past surgery. (Tr. 332). The MRI also revealed mild signal changes in Plaintiff's left temporal white matter. (Tr. 332-33). In May 2009, Plaintiff reported to her physical therapist that she was continuing to improve and was having a "decrease in headaches." (Tr. 396).

Based on such evidence, the ALJ determined that Plaintiff's migraine headaches were a severe impairment. The ALJ also gave "great weight" to Dr. Kanabar's findings and incorporated Dr. Kanabar's functional limitations into Plaintiff's RFC assessment. (Tr. 17). Plaintiff argues, however, that the ALJ should have included additional

7

limitations in order to accommodate her migraine headaches. Plaintiff's Statement of Errors does not specifically outline what additional limitations or exceptions the ALJ should have included in his RFC assessment. However, in her reply memorandum, Plaintiff asserts, "if the headaches last a half a day or whole day and occur at the rate of 4 to seven a month. . . Plaintiff could not maintain employment" according to the testimony of the vocational expert. (Doc. 15 at 6). Such an assertion however, is not supported by any objective evidence and appears to be based solely on Plaintiff's testimony at the hearing.

An ALJ, "is required to incorporate [into a hypothetical] only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d at 1235 (6th Cir.1993). In this case, the ALJ afforded limited weight to Plaintiff's testimony regarding migraine headaches due to her inconsistent testimony and extensive reported daily activities. The ALJ noted that while Plaintiff complained of disabling headache pain, the record establish that she did not exhibit any overt pain behavior in that regard. (Tr. 16, 271). The ALJ further noted that there was no objective evidence provided that supported her contention that she would have to miss multiple days per month from work because of migraine headaches. Notably, Plaintiff does not challenge the ALJ's credibility finding. Accordingly, the undersigned finds that the ALJ did not err in evaluating Plaintiff's migraine headache pain and his decision is substantially supported in this regard.

*2. Short term memory and cognitive difficulties*

Plaintiff further asserts that the ALJ's RFC assessment failed to include limitations related to Plaintiff's short term memory and related cognitive problems. In support of this assertion, Plaintiff argues that the objective evidence of record

8

establishes that she has a "bad memory." Plaintiff's assertion, even if true, fails to identify any functional limitations associated with her bad memory or what limitation the ALJ should have included.

Notably, in January 2007, Plaintiff was examined by Dr. Yerian, a state agency psychologist. (Tr. 268-74). Dr. Yerian noted that Plaintiff had difficulty calculating simple arithmetic problems in her head but that she was able to perform tasks during testing that required good concentration and attention without difficulty. (Tr. 272). Additionally, intelligence testing revealed that Plaintiff had a verbal IQ of 85, a performance IQ of 85, and a full scale IQ of 84. (Tr. 272). These scores placed Plaintiff in the low average range of intelligence. (Tr. 272). Plaintiff's Immediate, General, and Working Memory Index scores were also in the low average-to-average range. (Tr. 272). Dr. Yerian found Plaintiff's learning and memory abilities were efficient and intact. (Tr. 272).

Plaintiff was also examined by Dr. Smith, a state agency physician, in January 2007. (Tr. 276-78). Dr. Smith noted that Plaintiff had difficulty performing the Serial Sevens and she had difficulty doing arithmetic in her head. (Tr. 278). Dr. Smith further noted that Plaintiff has some mild encephalopathic features with impairments of recent memory and some problems with higher integrative function. (Tr. 278). However, Dr. Smith also indicated that "[i]t is too early to spectate about her long term mental status." *Id.*

Here, the evidence of record fails to establish any functional limitations associated with Plaintiff's "bad memory." Notably, it is well established that a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151

(6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). More importantly, contrary to Plaintiff's assertion, the ALJ properly accounted for her cognitive difficulties by limiting her to work that was simple, routine, and repetitive; and done in a low stress environment defined as free of fast paced production requirements; involving only simple, work-related decisions; and with few, if any, workplace changes. (Tr. 18 )

The ALJ's decision clearly indicates the he properly considered Plaintiff's testimony, in light of the medical evidence of record. Accordingly, the undersigned finds the ALJ's opinion reflects a comprehensive examination of the record and properly follows the pertinent law and regulations.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                        *s/Stephanie K. Bowman*
                                        Stephanie K. Bowman
                                        United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| CHERI DITMER, | Case No. 1:10-cv-877 |
| Plaintiff, | Beckwith, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).