IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Cheri Ditmer,                )
                             )
        Plaintiff,           ) Case No. 1:10-CV-877
                             )
    vs.                      )
                             )
Michael J. Astrue,           )
Commissioner of Social       )
Security,                    )
                             )
        Defendant.           )

O R D E R

This matter is before the Court on Magistrate Judge Bowman's Report and Recommendation of December 16, 2011 (Doc. No. 16) and Plaintiff Cheri Ditmer's objections to the Report and Recommendation (Doc. No. 17).  In her Report and Recommendation, Magistrate Judge Bowman concluded that the Administrative Law Judge's ("ALJ") determination that Plaintiff is not disabled under the Social Security Regulations was supported by substantial evidence.  Therefore, Judge Bowman recommended affirming the ALJ's decision and closing this case on the docket of the Court.  For the reasons that follow, Plaintiff's objections to the Report and Recommendation are not well-taken and are **OVERRULED**.  The Court **ADOPTS** the Report and Recommendation.  The decision of the ALJ finding that Plaintiff is not disabled under the Social Security Regulations is **AFFIRMED.**

I. Background

In September 2006, Plaintiff Cheri Ditmer filed a claim for Supplement Security Income ("SSI") based on knee pain, disc disease, a ruptured blood vessel in her head, strokes secondary to arteriovenous malformations, mitral valve prolapse, personal and emotional changes, and poor memory. Tr. 152. Plaintiff was 32 years old at the alleged onset date of disability and she has no prior relevant work history. Plaintiff's single assignment of error focuses on the ALJ's determination that she is not disabled from performing a limited range of sedentary work due to migraine headaches and short-term memory loss.

Plaintiff suffered a right cerebral hemorrhage secondary to arteriovenous malformations ("AVM") in September 2006. Tr. 439. She underwent a right frontal craniotomy to remove the hemorrhage and the AVM was excised. Id. Although the surgery was successful and Plaintiff initially responded well, she began experiencing migraine headaches. Plaintiff also claims to suffer from short-term memory loss as a result of the surgery.

As Judge Bowman recounted in her Report and Recommendation, in March 2007, Plaintiff sought treatment for a migraine headache in the emergency room. Tr. 316. She was given medication to treat the headache and nausea and was released at her own request after the pain subsided. Id. Plaintiff also

received treatment for migraines from Dr. Kanabar in March and April 2009. Tr. 329-331. Dr. Kanabar diagnosed Plaintiff with common migraine headaches and started her on Keppra and Fiorcet. Id. In April 2009, Plaintiff had a MRI of the brain which showed encephalomalacia and gliosis in the right frontal lobe consistent with post-surgery changes and mild signal abnormalities in the left temporal parietal periventricular white matter. Tr. 332. In should be noted that Dr. Kanabar did not state in her treatment notes any opinion on the effect of Plaintiff's migraines on her ability to work.

In January 2007, state agency examining psychologist Dr. Stephen Yerian interviewed Plaintiff and had her complete the WAIS-III test and the WMS-III memory test. Although Plaintiff scored in the low average range of intelligence, and her arithmetic ability was significantly weak, Dr. Yerian concluded that her "learning and memory abilities seemed relatively efficient and intact." Tr. 272. As is relevant here, Dr. Yerian concluded:

> She did not demonstrate any overt memory difficulties in the mental status examination or on the memory testing. She does seem to learn more efficiently when provided with multiple or repetitive learning trials. This indicates relatively mild impairments or limitations to memory recall when using free recall memory methods. She is not limited or impaired with regard to learning, understanding, and using simple, concrete, and less detailed information. Also, her ability to learn, understand, and follow more complex, abstract, and detailed instructions is not limited or impaired based upon her performance during the mental

>           status examination, her level of educational
>           attainment, efficient verbal abstracting ability, and a
>           grossly estimated level of Low Average range of general
>           intelligence.

Tr. 274.

In February 2007, state reviewing psychologist Dr. Todd Finnerty provided a mental residual functional capacity assessment. Tr. 284-287. Dr. Finnerty noted Plaintiff's claimed poor memory and the results of her WAIS-III and WMS-III tests and concluded that she is able to comprehend, remember, and carry out simple instructions. Dr. Finnerty also concluded that Plaintiff can maintain attention and make simple decisions. Dr. Finnerty felt that Plaintiff would likely perform better in a setting with minimal interaction with others but that she can relate adequately to others on a superficial basis. Dr. Finnerty stated that Plaintiff can adapt to a setting with routine and predictable duties. Finally, Dr. Finnerty stated that Plaintiff's statements were partially consistent with the medical evidence. Tr. 286. In his written decision, the ALJ gave "great weight" to Dr. Finnerty's opinion and "some weight" to Dr. Yerian's opinion. Tr. 17.

During the evidentiary hearing, Plaintiff testified that she has headaches on a daily basis. Tr. 40,44 52. On a pain scale of 0 to 10, Plaintiff said that her headaches average a 7. Tr. 44. Plaintiff takes Tylenol, non-aspirin and Vicodin for pain. Id. Plaintiff testified that she experiences nausea

three or four times a week when a headache progresses to a migraine. Tr. 45-46. She also stated that three or four times a week she has to take three or four hour naps because of fatigue. Tr. 52-53. Plaintiff also testified that she is more forgetful since her surgery and often has to write herself reminder notes for appointments or for grocery items. Tr. 46-47

With regard to daily activities, Plaintiff testified that she drives about three times a week when she is not on narcotic medication. Tr. 33, 50. Plaintiff can do some light housework and some laundry. Tr. 47. She does some spot-mopping and some dishes, but does not vacuum or take out the trash. Tr. 48. Plaintiff cooks about three times a week. Tr. 49. Plaintiff testified that she does not do yard work, but, as the ALJ noted in his decision, she was treated at the emergency room for poison ivy which she said she caught while doing yard work. Tr. 50. Plaintiff takes care of her youngest son, who is autistic. Id. Plaintiff watches television for about four hours per day and plays video games for less than an hour. Tr. 66. Plaintiff does not read because her reading glasses give her headaches. Tr. 67. Plaintiff uses a computer for a few minutes about three times a week. Tr. 68. Plaintiff took a week-long vacation to Las Vegas and California with her husband. Tr. 67-68. In the summertime, she takes her children swimming at a lake located about ten miles away. Tr. 69. Plaintiff initially

denied using marijuana, but later admitted that she used marijuana a few times when she was younger. Tr. 70, 73. However, as the ALJ noted in his decision, in September 2006, Plaintiff told Grant Hospital that she occasionally uses marijuana. Tr. 17, 246.

      The ALJ called on a vocational expert ("VE") during the evidentiary hearing. The ALJ proposed to the VE a hypothetical person with the Plaintiff's age, education, and work experience with the residual functional capacity ("RFC") to lift up to 15 pounds occasionally, lift and carry 10 pounds frequently, stand or walk for approximately four hours in an eight hour day. This hypothetical person can never climb ladders, ropes or scaffolds but can occasionally climb ramps or stairs and can occasionally perform balancing, stooping, crouching, kneeling, and crawling. The hypothetical person can perform frequent gross and fine manipulation of objects. The hypothetical person cannot be exposed to excessive noise or to bright light. The hypothetical person cannot be exposed to unprotected heights or moving machinery. Finally, the hypothetical person is limited to performing simple, routine, and repetitive tasks in a low stress work environment, which he defined as not involving fast-paced production requirements, with only simple work-related decisions, few workplace changes, no interaction with the public and only occasional interaction with co-workers and supervisors. Tr. 75-

76. The VE testified that this hypothetical person could perform such jobs as unskilled assembler, unskilled inspector, and hand packager and that significant numbers of these jobs exist in the national economy. Tr. 76-77. On cross-examination by Plaintiff's counsel, the VE testified that if Plaintiff's testimony that she has to rest or nap three times a week for three to four hours because of fatigue and her medications was credited, it would eliminate all of the above jobs. Tr. 78.

On January 28, 2010, the ALJ issued his decision concluding that Plaintiff is not disabled under the Social Security regulations and denying her claim for SSI benefits. As is relevant here, the ALJ determined that Plaintiff's migraine headaches constitute a severe impairment which could be expected to produce the symptoms she complained of, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. Tr. 15. In discounting Plaintiff's credibility, the ALJ determined that her complaints of pain and limitation were not well-supported by the medical record. The ALJ further noted inconsistencies in Plaintiff's testimony. First, the ALJ found that Plaintiff's claimed need to take frequent naps was not well supported. Second, Plaintiff testified that after her stroke, she needed to relearn how to speak, write, and talk, but that there were no medical records to support this claim. Third, Dr. Yerian stated

in his report that Plaintiff was an unreliable historian and that, although complaining of severe headaches, she did not exhibit any overt pain behaviors during their interview. Fourth, although Plaintiff complained of sleep disturbances, Dr. Kanabar documented that she did not have any sleep disturbances. Fifth, the ALJ concluded that Plaintiff's daily activities are inconsistent with her claims of disabling limitations. Specifically, the ALJ noted that Plaintiff was treated for poison ivy she contracted doing yard work despite testifying that she does not do yard work. The ALJ also noted that Plaintiff's medical records did not document any limitations in her recreational ability, concentration, and activities of daily living. Sixth, and finally, the ALJ noted Plaintiff's inconsistent testimony about her marijuana use. Tr. 16-17.

The ALJ adopted the RFC for the hypothetical person he posited to the VE and, at the fifth step of the sequential disability evaluation process, determined that Plaintiff is not disabled because there are a substantial number of jobs in the national economy that she can perform. Tr. 18-19. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of Social Security. Tr. 1-3. Plaintiff filed a timely complaint with this Court for review of the ALJ's decision.

Plaintiff asserted one assignment of error in her Statement of Specific Errors:

> The ALJ/Commissioner's RFC determination and hypothetical questions to the VE did not adequately portray the <u>symptomatic</u> effects of the "severe" impairments of migraine headaches, headaches, residuals of craniotomy secondary to intracranial hemorrhages, upon claimant's ability to perform work-related activities in violation of SSR's 96-8p, 96-9p and <u>Ealy v. Commissioner of Social Security</u>, 594 F.3d 504, 516 (6th Cir. 2010).

Doc. No. 12, at 1 (emphasis in original). The gist of Plaintiff's assignment of error was that the ALJ's decision was not supported by substantial evidence because in his hypothetical to the VE, the ALJ failed to include all of the relevant limitations resulting from her headache pain, including the time she would miss from work, her dizziness, her inability to do simple arithmetic, and her impaired short-term memory. <u>Id.</u>

Magistrate Judge Bowman found that Plaintiff's assignment of error is without merit and recommended affirming the ALJ's decision. Judge Bowman noted that in his hypothetical to the VE, an ALJ is only required to incorporate those limitations he accepts as credible. Judge Bowman found that there was a substantial basis for the ALJ to give Plaintiff's subjective complaints limited weight. Judge Bowman noted further in that regard that Plaintiff was not challenging the ALJ's credibility finding. Judge Bowman also determined that the record did not disclose any functional limitations caused by

9

Plaintiff's alleged bad memory.  Judge Bowman specifically noted Dr. Yerian's report indicating that Plaintiff's learning and memory abilities are intact.  Therefore, Judge Bowman determined that the ALJ's decision finding that Plaintiff is not disabled under the Social Security regulations was supported by substantial evidence.

Plaintiff filed timely objections to Judge Bowman's Report and Recommendation which are ready for disposition.

## II. Standard of Review

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ.  See 42 U.S.C. § 405(g).  The Court is to determine only whether the record as a whole contains substantial evidence to support the ALJ's decision.  "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion."  LeMaster v. Secretary of Health & Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted).  The evidence must do more than create a suspicion of the existence of the fact to be established.  Id.  Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury.  Id.  If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if

it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health & Human Serv., 658 F.2d 437, 439 (6th Cir. 1981). The district court reviews de novo a magistrate judge's report and recommendation regarding social security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

### III. Analysis

Plaintiff's objections to the Report and Recommendation seem to involve a hodgepodge of interrelated issues. Plaintiff contends that the Magistrate Judge improperly based her decision on factual findings not made by the ALJ in order to "rescue" his decision. She also appears to contend that it was improper for the ALJ to use her inconsistent testimony as to marijuana use and contracting poison ivy while doing yard work to discount her credibility concerning the limitations imposed by her headaches. Plaintiff also seems to contend that both the ALJ and the Magistrate improperly required her to support her complaints of pain by objective evidence. Finally, Plaintiff again argues that the ALJ failed to account properly for her short-term memory impairments. Plaintiff's objections are not well-taken.

Plaintiff insists that the ALJ's hypothetical to the ALJ did not accurately portray her limitations because it did not include all of the limitations she thinks should have been included. Specifically, Plaintiff contends that the ALJ did not

11

consider the absenteeism that would be caused by her headaches and her short-term memory deficits.  The problem with Plaintiff's argument, however, is that while the ALJ is required to accurately portray her limitations in his hypothetical, he is only required to include those limitations that he finds are credible.  <u>Casey v. Sec'y of Health & Human Serv.</u>, 987 F.2d 1230, 1235 (6th Cir. 1993).

In this case, there was no evidence in the record, <u>other than her own testimony</u>, that Plaintiff's headaches and migraines will cause excessive absenteeism and, therefore, preclude her from working.  In other words, there are no medical source opinions, of any kind, that indicate that Plaintiff's migraine headaches will cause excessive absenteeism.  Thus, while the ALJ found that Plaintiff's migraine headaches are a severe impairment, he also found that her subjective complaints about the limitations imposed by those headaches are overstated. Having discounted Plaintiff's credibility on the limitations imposed by her headaches, there was no evidentiary basis upon which to conclude that she would experience excessive absenteeism.

As Magistrate Judge Bowman indicated in her Report and Recommendation, Plaintiff does not seem to quarrel with the process by which the ALJ evaluated her credibility so much as she seems to suggest that the ALJ should have found that she was

credible about her limitations. It is well-settled, however, than an ALJ's credibility determinations are entitled to substantial deference and will not be overturned lightly. Hardaway v. Sec'y of Health & Human Serv., 823 F.2d 922, 928 (6th Cir. 1987); Houston v. Sec'y of Health & Human Serv., 736 F.2d 736 F.2d 365, 367 (6th Cir. 1984). Here, there was a substantial basis for the ALJ to discount Plaintiff's credibility.

First, as the ALJ observed, Plaintiff made several inconsistent statements during the evidentiary hearing. She was not truthful about her use of marijuana nor, apparently, was she truthful about her ability to do yard work. Additionally, as the ALJ also noted, Plaintiff testified that she had to relearn how to write and speak after her stroke, but there were no medical records - a referral to speech therapy, for instance - to support this claim. Plaintiff does not cite any case or rule for the proposition that she apparently advances that the ALJ must limit or restrict his use of these inconsistent statements to judge her overall credibility. Indeed, other courts have recognized the relevancy of the claimant's inconsistent statements concerning the use of alcohol and drugs in evaluating credibility. E.g., Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999); Rusten v. Commissioner of Social Sec., No. 10-35514, 2012 WL 507161, at *1 (9th Cir. Feb. 16, 2012) ("Inconsistent or dishonest statements about drug use can be used to infer a lack of veracity in the

13

claimant's other assertions."); Bolton v. Barnhart, 117 Fed. Appx. 80, 85 (10th Cir. 2004). Moreover, "[i]n assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001) (internal quotation marks omitted).

Finally, as the ALJ noted, Plaintiff's subjective complaints are not well-supported by the medical record. Tr. 16. For instance, Dr. Kanabar's treatment notes do not indicate that Plaintiff complained of dizziness or excessive fatigue. It would be reasonable to expect that Plaintiff would have complained about these symptoms had they been bothering her at the time.

Additionally, as summarized by the ALJ, Plaintiff's daily activities are inconsistent with her claim that she would miss three or four days of work per week due to fatigue. Plaintiff watches television and plays video games for up to five hours per day. She does some housework and takes care of her youngest son. Plaintiff drives several times a week. She is able to take her children swimming at a lake several miles from her home. Plaintiff went on week-long vacation to Las Vegas and California. The ALJ could reasonably conclude that Plaintiff's level of activity is inconsistent with her claimed level of fatigue.

Furthermore, Plaintiff's contention that the ALJ failed to fully take into consideration her short-term memory loss in developing her RFC is contradicted by the record. In advancing this argument, she appears to rely significantly on the actual results of the WAIS-III test rather than the conclusions that Dr. Yerian drew from it. For instance, Plaintiff repeatedly emphasizes her impaired arithmetic skills and the fact that the test shows her memory skills rank in the bottom percentile. While this is an accurate reflection of the raw results of the psychological testing, it was Dr. Yerian's function to interpret the results and translate the results into an evaluation of Plaintiff's mental ability to perform work. Thus, in formulating his conclusions, Dr. Yerian necessarily took this information into account and concluded nevertheless that her memory is only mildly impaired and that she can in fact learn, understand, and carry out complex instructions. Dr. Finnerty, the reviewing psychologist, opined, based on the same test results, that Plaintiff can remember and carry out simple instructions. In other words, Dr. Finnerty's RFC was more restrictive than Dr. Yerian's. The ALJ included Dr. Finnerty's more restrictive limitations in his RFC and it adequately accounts for Plaintiff's short-term memory loss. The ALJ, therefore, included all of Plaintiff's relevant limitations in his hypothetical to the VE. The ALJ, consequently, did not make a vocational error in his

hypothetical to the VE.

## Conclusion

For all of the reasons stated above, Plaintiff's objections to the Report and Recommendation are not well-taken and are **OVERRULED.**  The Court **ADOPTS** the Report and Recommendation.  The decision of the ALJ finding that Plaintiff is not disabled under the Social Security regulations is **AFFIRMED.  THIS CASE IS CLOSED.**


**IT IS SO ORDERED**

Date February 28, 2012           s/Sandra S. Beckwith
                                  Sandra S. Beckwith
                         Senior United States District Judge